## PONDER v. LAMAR LIFE INS. CO.

(Circuit Court of Appeals, Fifth Circuit. March 11, 1926. Rehearing Denied April 8, 1926.)

No. 4644.

Insurance ⬅360(1)—Life policy, requiring payment of first annual premium before it should take effect, but also providing for semiannual or quarterly installments, held to take effect on payment of quarterly installment, but to remain in force only until second installment became payable.

A life policy required delivery and payment of the first premium before it should take effect, and stated the annual premium; but it provided that insured had the right at any time to substitute semiannual or quarterly installments, which would "continue the insurance in force for the time paid for." The policy was delivered on payment by insured of a quarterly installment for which receipt was given. *Held* that, as recognized by the parties, the installment provision applied to the first premium, that the policy took effect, but remained in force only until the second installment became payable, and that on default in such payment it lapsed under its terms.

In Error to the District Court of the United States for the Western District of Louisiana; Benjamin C. Dawkins, Judge.

Action at law by Mrs. Gertrude S. Ponder against the Lamar Life Insurance Company. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 6 F.(2d) 294.

Joseph D. Barksdale, Otis W. Bullock, and Howard B. Warren, all of Shreveport, La., for plaintiff in error.

Eugene J. McGivney, of New Orleans, La., and W. Calvin Wells, of Jackson, Miss., for defendant in error.

Before WALKER and FOSTER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This was an action by the plaintiff in error, the beneficiary named in a policy, dated September 14, 1923, in the sum of $20,000, upon the life of her deceased husband. The petition alleged that the policy was issued upon the payment of the first annual premium stipulated therein, and that the insured died on April 15, 1924. The answer to the petition denied its allegation as to the payment of premium, and averred: " * * * That the assured had elected, under the provisions of the policy contained on page 2 thereof, to make the payment of the premium on a quarterly basis, and after the payment of the first quarterly premium of two hundred and seventy-six and 60/100 ($276.60)

dollars made no further payments of premiums on the said policy. That at the date of the death of the assured the policy was not in force as alleged in the petition, but under the terms of the said policy it had become forfeited and void for nonpayment of the premium due thereon, notwithstanding legal notice of the due date thereof had been given."

The case was tried by the court without a jury, and resulted in a judgment in favor of the insurer. Over plaintiff's objection the court admitted evidence to the effect that at the time of the delivery of the policy only the sum of $276.60 was paid, which the insurer accepted as a quarterly premium, the insured receiving a receipt for that amount as a quarterly premium, and that the insured, long before his death, was timely notified of the failure to pay the subsequent installments, as well as the forfeiture of the policy resulting from such failure.

The policy contained the following:

"Amount, $20,000.00.            No. 31499.
"Premium, $1,044.00.            Age 56.

"In consideration of the signed application for this policy, which is the basis and is hereby made a part of this contract, a copy of which application is attached hereto, and the payment of the premium herein stated, in the manner specified, hereby insures the life of the person designated as the insured for the amount named herein, payable as specified, subject to the conditions, provisions, and privileges on the following pages hereof, which are hereby made a part of this contract.

\* \* \* \* \* \* \*

"Premium.—One thousand forty-four and 00⁄100 dollars, payable on delivery of this policy, and thereafter annually at the home office of the company, or as provided under the heading 'Premium Payments' on the second page hereof, in exchange for the company's receipt, on or before the 14th day of September in every year during the continuance of this policy.

\* \* \* \* \* \* \*

"Premium Payments.—This policy shall not take effect until the first premium is paid, and the policy actually delivered during the life and good health of the insured. Each premium after the first year's premium is due and payable in advance at the home office of the company in the city of Jackson, Mississippi, but will be accepted elsewhere when duly paid in exchange for the company's receipt, signed by the president, a vice president, secretary, or assistant secre-tary, and countersigned by the agent designated therein. If any premium is not duly paid, the policy shall cease and determine, except as provided in the nonforfeiture provisions of the policy.

\* \* \* \* \* \* \*

"Change in Payment of Premiums.—The insured has the right, at the time any premium falls due, to pay an annual premium or substitute therefor semiannual or quarterly installments, according to the company's schedule for the kind of policy held, and such installments will continue the insurance in force for the time paid for, in accordance with the privileges, conditions, and provisions of this policy, the balance of any year's premium unpaid being deducted in any settlement or claim thereunder.

"The annual premium is $1,044.00; semiannual, $543.00; quarterly, $276.60.

"Grace in Payment of Premiums.—After this contract has been in force three months, an extension of one month (not less than 30 days) will be allowed in the payment of any premium, and the company agrees to accept, without further medical examination, any premium, without interest charge, if tendered within one month from due date, during which time the policy will remain in full force, subject to the deduction of the unpaid premium or any installment thereof, should the policy become a claim during such period of grace."

The insured's application, which was attached to the policy, contained the following:

"Total first premium, $1,044.00.

"Is first premium to be annual, semiannual, or quarter-annual? A.

\* \* \* \* \* \* \*

"I agree as follows: (1) That the insurance hereby applied for shall not take effect unless the full first premium is paid and the policy is delivered to and received by me during my lifetime and good health, and that, unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application."

The just quoted part of the application shows that when the policy was applied for the applicant indicated that the first premium would be an annual one, in the sum of $1,044. Evidently the policy was prepared and signed in the expectation that that amount would be paid upon the delivery of the instrument. In behalf of the plaintiff it was contended that the intentional delivery of the policy without requiring pay-

ment of the annual premium stated therein had the effect of estopping the insurer to deny that credit for that premium was given, or to claim a forfeiture of the policy for nonpayment of a premium covering any part of the year beginning at the date of the policy. It is not necessary to determine whether such would or would not have been the result, if the policy had been intentionally delivered without requiring the payment of any premium at the time of delivery, as a quarterly premium was paid and accepted when the policy was delivered.

The evidence shows that the parties to the transaction treated the provision headed "Change in Payment of Premiums" as applicable to the first premium as well as to premiums falling due after the policy went into effect. The giving and acceptance of the receipt for $276.60 as a quarterly premium (that being the amount of a quarterly premium stated in the policy) was as much a part of the transaction which brought into existence the insurance contract as the delivery and acceptance of the policy itself. Considered together, the two instruments delivered to and accepted by the insured, the policy and the receipt for the quarterly premium of $276.60, show that the insurer consented to put the policy into effect upon the payment of a quarterly premium, instead of an annual one, and that the insured understood that such payment would keep the policy in force only for the time paid for and the additional one month provided for by the clause as to "Grace in Payment of Premiums." The language of that provision, "After this contract has been in force three months an extension of one month * * * will be allowed," etc., indicates an intention to provide for the contingency of the first premium being such that another premium would be due at the end of three months from the date the policy became effective.

The policy itself contained no acknowledgment by the insurer of the payment of any premium. Considered together, the policy and the receipt show that at the time the contract of insurance came into existence a quarterly premium was substituted for an annual one, with the result that the payment then made kept the policy in force only so long as, under the terms of the policy, the payment of a quarterly premium would keep it in force. No evidence adduced tended to prove that, by inducing the insured to believe that the payment he made would keep the policy in force for one year, the insurer estopped itself to claim that the

policy ceased to be effective by the insured's failure to pay another premium within that time. On the contrary, the evidence indicates that, without protest from the insured, he was notified long before his death of the forfeiture of the policy for the nonpayment of another installment of premium within the time allowed.

Nothing in the record indicates that at or subsequent to the time when the policy went into effect the insured understood or claimed that he had any rights thereunder, except such as, by the terms of the policy, resulted from the payment of an initial quarterly premium. To hold that in the circumstances of its delivery and acceptance the policy meant that it was to remain in force for a year from its date, though only the initial quarterly premium was paid, would give to what occurred when the contract was made an effect plainly not intended or expected by either party to the transaction. By the express terms of the policy it ceased and determined prior to the insured's death as a result of his failure to pay a premium within the time allowed.

The judgment is affirmed.