UNITED STATES of America, Appellee,

v.

Oscar CIVELLI, Defendant–Appellant.

No. 1321, Docket 89–1073.

United States Court of Appeals,
Second Circuit.

Argued June 22, 1989.

Decided Aug. 15, 1989.

Stanley Neustadter, New York City, for defendant-appellant.

Jacques Semmelman, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., John Gleeson, Asst.

U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before MESKILL, PIERCE, and MAHONEY, Circuit Judges.

PIERCE, Circuit Judge:

Oscar Civelli appeals from a judgment of the United States District Court for the Eastern District of New York (Korman, J.) convicting him of conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and possession of in excess of five kilograms of cocaine with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 18 U.S.C. § 2. At the time he was apprehended, appellant was carrying in his van almost nine kilograms of cocaine in four large manila envelopes. The openings to the envelopes were folded over, but not sealed. At his trial, appellant testified that he was simply delivering the packages, and that he did not know what was inside the envelopes. Although both sides' closing arguments and the court's instructions focused on appellant's actual knowledge, during the course of deliberations the jury sent a note to the court asking whether it was enough that appellant *suspected* that he was carrying narcotics. In response, the court discussed the matter with counsel and, with no meaningful objection from defense counsel, gave the jury a supplemental instruction regarding appellant's possible "conscious avoidance" of knowledge of the contents of the packages. On appeal, appellant contends that the court erred in giving the supplemental instruction because (1) the evidence was not sufficient to warrant a conscious avoidance charge, and (2) the appellant was never afforded an opportunity to argue the question of conscious avoidance to the jury. For the reasons stated below, the judgment of the district court is affirmed.

## BACKGROUND

On the morning of April 22, 1988, appellant received a telephone call at his Queens, New York apartment from one Diego Bedoya, who asked appellant to drive to Bedoya's home in Staten Island, New York, to make a delivery for him. (Bedoya's conviction and sentence were the subject of an earlier decision of this court, *United States v. Bedoya*, 878 F.2d 73 (2d Cir.1989) (per curiam)). Appellant had on occasion offered commercial delivery and moving services, and he had moved household items for Bedoya and his wife several times before. Appellant left his apartment shortly thereafter, and drove in his van to Bedoya's home on Staten Island. Bedoya's home was under surveillance by a joint federal-city narcotics task force, as a suspected center of narcotics distribution. Appellant was observed arriving at the house shortly after 1 p.m., and emerging approximately ten minutes later, carrying four large tan envelopes. As appellant drove away, he was followed by two officers from the task force.

One of the officers, Detective Pritchard, subsequently testified that appellant drove for a few blocks and then pulled over to the curb, alighted from the van, walked toward the rear of the vehicle while looking back at approaching traffic, and then reentered the van and proceeded further. Pritchard testified that appellant stopped twice more, again leaving the van and looking to the rear; he finally drove across the Verrazano Narrows Bridge into Brooklyn. Once in Brooklyn, appellant left the highway and stopped at a small supermarket, where he made a call from a public telephone.

The officers from the surveillance team approached appellant as he was about to reenter his van. While one officer asked appellant for his license and registration, the other peered into the van and saw the four envelopes. Detective Pritchard testified at trial that appellant appeared extremely nervous during this questioning. The officers told appellant that the house he had left in Staten Island was suspected of being a center of drug trafficking, and they asked him what was in the packages in the van. Appellant pulled one of the envelopes from the van to show the officers. At the officers' request, Civelli opened the package. Detective Pritchard examined the contents, and discovered several bricks of cocaine. The officers then

placed Civelli under arrest; the other three envelopes which were seized also contained cocaine.

The officers recovered a total of approximately 8.5 kilograms of 96% pure cocaine from the four envelopes, packed in brick form. Each envelope was folded shut, not sealed, and each had a name written on the outside. The officers also recovered a telephone beeper and a list of names from appellant. The list was in Civelli's handwriting, and the names on the list corresponded to the names on the envelopes. There was a telephone number next to each name on the list, and a circled digit which corresponded to the number of bricks of cocaine in each of the labeled envelopes.

Appellant was indicted for conspiracy to possess cocaine with intent to distribute, and possession of in excess of five kilograms of cocaine with intent to distribute. A third count, involving use of a firearm, was dropped on the government's motion prior to trial, but Civelli was convicted after a three-day trial on the conspiracy and distribution counts.

The key question at trial, as identified in opening and closing statements, was whether appellant knew he was carrying narcotics. Detective Pritchard testified appellant had acknowledged that the packages contained cocaine *before* the first envelope was opened. Appellant, who testified in his own defense, vigorously denied that he made such a statement. He testified that he never knew what was inside the packages until they were opened by the officers. He conceded that he had prepared the list of names seized by the police, but he stated that he had transcribed the list verbatim at Diego Bedoya's direction and, further, that Bedoya was to pay him only $100 to take the packages. Appellant testified that Bedoya had told him a person named "Freddie" would use the beeper to page appellant at his place of work, and Freddie would pick up the packages from appellant.

In summations, the government argued that appellant had actual knowledge of the contents of the packages; the defense argued that appellant was just an innocent dupe in a broader narcotics distribution ring. The court's instructions to the jury were also directed to appellant's actual knowledge. Judge Korman instructed the members of the jury that, in order to find the defendant guilty on either the conspiracy or the substantive count, they had to find that the government had "prove[d] beyond a reasonable doubt that the defendant knew that the packages in the van contained cocaine."

During the course of deliberations the jury sent a note to Judge Korman asking:

> If Oscar Civelli suspected that he was carrying cocaine, but didn't look in the package[,] would that have constituted conspiracy?

The note precipitated the following colloquy:

> THE COURT: It seems to me an appropriate charge is the conscious avoidance charge.
>
> MR. JENKS [for appellant]: You're going to charge conscious avoidance now?
>
> THE COURT: There is no yes or no answer [to the note] in a meaningful way.
>
> MR. SHERIDAN [for the government]: If the charge is conspiracy, which as we know, as I know, your charge is in agreement. I don't see [why] looking in the bag is the sine qua non for the crime. It seems to me the question is, [Y]ou have to look in the package to have been involved in the conspiracy[?]
>
> THE COURT: The point that you make is one of the reasons why it's difficult to answer the question yes or no.
>
> Obviously he had to look in the bag, he had to agree to possess cocaine and that would be enough. But in the context of this case, looking at the facts of this case and the way the case is tried, there is no way that he can be guilty of conspiracy if he doesn't know, if you believe him.
>
> MR. SHERIDAN: But he could know without looking in the bag—
>
> MR. JENKS: I don't think the question can be answered with a yes or no.
>
> THE COURT: If he entered into a conspiracy—but as the case is tried there is no way to convict unless the jury feels he knew cocaine was in the bag. If the jury

is operating on some assumption he may have suspected it but didn't look, the best way to deal with it and the fairest way is the [conscious] avoidance charge....

[Discussion between the court and the prosecutor of the charge required under *United States v. Feroz*, 848 F.2d 359 (2d Cir.1988).]

THE COURT: I remember when I read *Feroz*, that it was something that I usually gave, the full charge.

Read this.

(Mr. Sheridan and Mr. Jenks perusing document handed to them by the Court.)

MR. SHERIDAN: This charge incorporates what the Second Circuit says must be incorporated.

THE COURT: ... Bring the jury in.

The court delivered its charge regarding conscious avoidance to the jury, and, after resuming deliberations, the jury thereafter returned verdicts of guilty on both counts. The court subsequently sentenced appellant to a term of 78 months' imprisonment on the conspiracy count, to run concurrently with a mandatory minimum sentence of 10 years' imprisonment on the substantive count. This appeal followed.

## DISCUSSION

Appellant presents two claims on appeal, both of which stem from the supplemental conscious avoidance charge given the jury. First, he contends that the record evidence did not warrant a conscious avoidance charge. Second, he argues that, even if there was a sufficient factual predicate for giving the charge, the district court erred by not affording appellant an opportunity to argue the question of conscious avoidance via summation to the jury.

■ We note at the outset that appellant's claims are severely undercut by his failure to make a proper objection at trial to the district court's proposed instruction. Counsel's almost casual complaint— "You're going to charge conscious avoidance *now*?" (probable emphasis)—in no way qualifies as the distinct and well-grounded objection required by Rule 30 of the Federal Rules of Criminal Procedure.

To preserve a question for appellate review, the objection must direct the trial court's attention to the contention that is to be raised on appeal. *See United States v. Lanza*, 790 F.2d 1015, 1021 (2d Cir.), *cert. denied*, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986). This, defense counsel plainly failed to do. Counsel's further comments during colloquy with the court only compounded his earlier failure, for his comments were expressions of acquiescence, not exception. Furthermore, defense counsel failed to request that he be allowed to reopen his summation to address the question of conscious avoidance.

Since appellant's objections to the conscious avoidance charge are essentially being raised for the first time on appeal, "the question before us is whether the district judge's inclusion of the conscious avoidance [charge] constituted plain error." *Lanza*, 790 F.2d at 1021; *see* Fed.R.Crim.P. 52(b). Thus, we may not reverse unless we believe that there has been a miscarriage of justice which denied the defendant a fair trial. *United States v. Kallash*, 785 F.2d 26, 29 (2d Cir.1986) (citing *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)); *see United States v. Cano*, 702 F.2d 370, 371 (2d Cir. 1983). As our discussion below reveals, no miscarriage of justice occurred here since the district court's conscious avoidance instruction was a proper response to the jury's inquiry.

### I. *The Factual Predicate for the Charge*

■ A conscious avoidance charge is appropriate when two conditions have been met. *See United States v. Mang Sun Wong*, 884 F.2d 1537, 1541 (2d Cir.1989). First, the defendant must—as did the appellant herein—contest some specific aspect of knowledge necessary for conviction. *Id.* (citing *Lanza*, 790 F.2d at 1022); *see also United States v. Beech-Nut Corp.*, 871 F.2d 1181, 1195–96 (2d Cir. 1989) (issues of knowledge properly addressed by conscious avoidance charge).

Appellant's challenge is directed at the second requirement: that there be an adequate factual predicate for the charge. Our analysis of this question is guided by our decisions in *Mang Sun Wong* and *United States v. Guzman*, 754 F.2d 482 (2d Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986). In *Guzman*, as here, the district court responded to an inquiry from the jury by giving a supplemental charge on conscious avoidance. Our holding in *Guzman*, recently reaffirmed in *Mang Sun Wong*, was that such a charge was proper where the "surrounding circumstances were such that reasonable persons could have concluded that the circumstances alone should have apprised defendants of the unlawful nature of their conduct." *Id.* at 489 (citing *United States v. Mohabir*, 624 F.2d 1140, 1154 (2d Cir.1980)); *see Mang Sun Wong*, slip op. at 7541–42. Noting again that we may reverse herein only on a showing of plain error, we must review the record to determine whether the evidence before the district court was sufficient to support a charge on conscious avoidance.

During cross-examination appellant conceded that, though he was expected at work later in the afternoon on the day of his arrest, he went directly to Bedoya's house without first asking Bedoya how long the delivery would take. Once there, appellant asked no questions of any substance; instead, he merely took instructions and accepted a beeper from Bedoya. According to Detective Pritchard's testimony, after appellant left Bedoya's house and was driving across Staten Island, he stopped several times—looking around each time—apparently in an effort to determine whether he was being followed. The planned delivery itself was plainly not a straightforward one, but was instead (on appellant's own testimony) to involve a beeper page, and then a transfer to an unknown man named "Freddie." Appellant testified that he was to give the packages and the list of names to Freddie. In light of this evidence, which tended reasonably to show that circumstances should have apprised appellant of the unlawful nature of his conduct, *see United States v.*

*Joyce*, 542 F.2d 158, 161 (2d Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 548 (1977), there was no plain error in the district court's decision to give the jury the supplemental charge on conscious avoidance.

## II. *The Propriety of the Charge After Closing Arguments*

Appellant's second claim is that the court, by giving a conscious avoidance charge *after* closing arguments had been made, denied appellant an opportunity to address the jury on the substance of that charge. Appellant points out that Rule 30 of the Federal Rules of Criminal Procedure requires the court to inform counsel of its proposed instructions *before* closing arguments, so that counsel will have a fair opportunity to tailor arguments to those instructions. *See* 2 C. Wright, *Federal Practice and Procedure* § 482, at 685 (1982). Appellant contends that it was a violation of Rule 30 for the district court to give its supplemental charge on conscious avoidance without affording appellant an opportunity to argue the question to the jury.

[4, 5] Appellant notably does not challenge the substance of the charge itself, *cf. United States v. Christmann*, 298 F.2d 651, 653–54 (2d Cir.1962), but rather only the circumstances in which it arose. If a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given. *See United States v. Bayer*, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654 (1947); *United States v. Burke*, 700 F.2d 70, 80 (2d Cir.), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Castaneda*, 555 F.2d 605, 611 (7th Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 152, 54 L.Ed.2d 113 (1977); *United States v. Neville*, 516 F.2d 1302, 1305 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). That discretion is even broader in this case, for, as noted, in the absence of a proper objection before the district court we will reverse only if the supplemental charge gave rise to plain er-

ror. *See United States v. Kallash*, 785 F.2d 26, 29 (2d Cir.1986); Fed.R.Crim.P. 52(b). On the facts herein, we hold that the district court's decision to give the supplemental charge after the summations were closed and deliberations had begun was clearly not plain error.

We recognize that Rule 30's requirement that counsel be informed of the instructions to be given before closing argument is an important safeguard of the right to a full and fair trial by jury. We also recognize that the district court's discretion regarding supplementary instructions is not without limits, *see United States v. Bolden*, 514 F.2d 1301, 1308 (D.C.Cir.1975), and that there are special cases where the principles that underlie Rule 30 may very well require that the district court allow further argument after an instruction has been given, *see United States v. Blackmon*, 839 F.2d 900, 910 (2d Cir.1988); *Loveless v. United States*, 260 F.2d 487, 488 (D.C.Cir.1958) (per curiam).

This, however, is not such a case. We simply "cannot agree that '[t]he critical goal of good argument was vitiated by the ... instruction.'" *United States v. Viserto*, 596 F.2d 531, 539 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). Both sides' closing arguments drew upon the evidence presented in the case in their respective efforts to show that appellant did, or did not, know that he was carrying narcotics. In the wake of these arguments that focused so narrowly on appellant's knowledge, the question of appellant's conscious avoidance of knowledge concerning the contents of the envelopes was a close logical complement of the arguments and evidence already given. Thus, in the context in which it arose, the supplemental charge did not so grossly "deviate[ ] from the path of trial that the parties had already pursued" as to cause a miscarriage of justice. *See id.* Having found no plain error in the court's decision to give the instruction, we conclude that this claim on appeal also must fail.

## CONCLUSION

We have considered all of appellant's arguments and, for the reasons set forth above, the judgment of the district court is affirmed.