13-3483-cv
Uzoukwu v. Krawiecki

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: February 19, 2015        Decided: November 5, 2015)

Docket No. 13-3483-cv

_____

AFAM UZOUKWU,

*Plaintiff-Appellant*,

v.

THE CITY OF NEW YORK, MICHELE KRAWIECKI, CARL MILUSO,

*Defendants-Appellees*.[1]

_____

Before: WINTER, POOLER, and SACK, *Circuit Judges*.

Afam Uzoukwu, proceeding pro se, appeals from the August

28, 2013 judgment of the United States District Court for the Southern District of

New York (Abrams, *J.*), dismissing his claims brought under 42 U.S.C. § 1983 for

---

[1] The Clerk of the Court is directed to amend the caption as above.

false arrest and excessive force, after a jury returned a verdict in favor of defendants. Halfway through its deliberations, the jury sent a note asking the district court whether "refusal to acknowledge/respond to police questions [is] considered obstruction of governmental administration." App'x at 1094. In response, the district court answered that "[r]efusal to answer police questions alone, without more, would not constitute obstruction of governmental administration," but that such a determination would "depend[] on the totality of the circumstances as you find them." App'x at 1094-95. However, New York law unambiguously holds that one cannot obstruct governmental administration merely by refusing to answer police questions or to provide identification, both because such conduct is constitutionally protected, and because obstruction of governmental administration requires as an element a physical or independently unlawful act. Given that this prejudicial error was indisputably preserved, we vacate the verdict and remand for a new trial.

Vacated and remanded.

_____

AFAM UZOUKWU, Long Island City, NY, *pro se Plaintiff-Appellant*.

2

PAMELA SEIDER DOLGOW, of counsel (Ronald E. Sternberg, of counsel, *on the brief*), *for* Zachary W. Carter, Corporation Counsel for the City of New York, New York, NY, *for Appellees*.

POOLER, *Circuit Judge*:

Afam Uzoukwu, proceeding pro se, appeals from the August 28, 2013 judgment of the United States District Court for the Southern District of New York (Abrams, *J.*), dismissing his claims brought under 42 U.S.C. § 1983 for false arrest and excessive force, after a jury returned a verdict in favor of defendants. Halfway through deliberations, the jury sent a note asking whether "refusal to acknowledge/respond to police questions [is] considered obstruction of governmental administration." App'x at 1094. In response, the district court equivocally answered that "[r]efusal to answer police questions alone, without more, would not constitute obstruction of governmental administration," but that such a determination would "depend[] on the totality of the circumstances as you find them." App'x at 1094-95. However, New York law unambiguously holds that one cannot obstruct governmental administration merely by refusing to answer police questions or to provide identification, both because such conduct is constitutionally protected, and because obstruction of governmental

3

administration requires as an element a physical or independently unlawful act. Given that this prejudicial error was indisputably preserved, we vacate the verdict and remand for a new trial.

**BACKGROUND**

According to defendants, the underlying incident began when the two named officers approached Uzoukwu at approximately 5 p.m. on May 15, 2008, while he was sitting on a park bench eating Jell-O, "[H]e did not have anything that" indicated he had "children in the park, such as a stroller." App'x at 783. The posted park rules prohibited adults who were not accompanying children from being in the playground near where the bench was located. The officers testified that they told plaintiff he could not be there without children, asked him several times whether he had any children with him, and repeatedly requested his identification, but plaintiff "continued looking down, eating his jello. He did not respond." App'x at 785. Officer Krawiecki testified that "to get his attention, I took his jello and I threw it out." App'x at 785. According to the officers, plaintiff at that point began screaming and cursing, whereupon he was arrested. **[A 785]** Uzoukwu was charged with (i) disorderly conduct and (ii) obstruction of governmental administration.

4

Uzoukwu claimed that he was at the park with his two children, ages 3 and 5, when the police approached him, demanded identification, and accused him of being a pedophile. He asserted that he only began yelling after the police officers hit him. In addition, plaintiff alleged that he was told by Sergeant Papgiannis that officers can "hit you, punch you, assault[] you, because they need to subdue you before they arrest you."

On August 21, 2009, plaintiff's criminal case was dismissed. On June 25, 2010, Uzoukwu, who was then represented by counsel, filed a complaint asserting "deprivation of rights under the United States Constitution and 42 U.S.C. § 1983" against the named officers and "liability of the City of New York for Constitutional violations." On October 19, 2010, plaintiff filed an amended complaint claiming, inter alia, false arrest, excessive force, deprivation of liberty, physical injury and emotional distress. While the complaint asserted that the two officers "struck plaintiff" when plaintiff "had not done anything [that] would justify an arrest," the complaint did not assert that he was bringing claims for battery or assault.

On March 29, 2013, the parties filed a joint pretrial order in which plaintiff asserted that the "claims to be tried are (a) false arrest, (b) false imprisonment,

(c) excessive force, (d) *assault*, (e) *battery*, (f) mental and emotional distress, and (g) malicious prosecution. Defendants then moved for partial summary judgment requesting that the district court dismiss with prejudice (1) plaintiff's claims against the City of New York for failure to present evidence of a municipal policy, and (2) the state law claims not previously asserted in the amended complaint. The district court issued a bench ruling granting defendants' motion.

Uzoukwu proceeded to trial on the Section 1983 claims against the officers for false arrest and excessive force. As a defense to his claim of false arrest, the officers argued that they had probable cause to believe plaintiff had committed the crimes of (i) obstruction of governmental administration and (ii) disorderly conduct. At the close of trial, the jury was instructed that the officers could not be held liable for false arrest if they had probable cause to believe plaintiff had committed the crime of either (i) obstruction of governmental administration or (ii) disorderly conduct.

An hour after the jury retired to deliberate, it sent a note requesting the parties' stipulations and the arrest records, and asking the following questions:

> 1) Is refusal to acknowledge/respond to police questions
> considered obstruction of governmental
> administration?
>
> 2) Does police antagonizing/provoking emotional
> response weaken probable cause?
>
> 3) If police officer inappropriately approaches (e.g. due
> to bias) an individual, who then gives probable cause
> for arrest, is probable cause then eliminated?

App'x at 1033-34, 1038.

That night, the parties submitted letters to the court proposing answers to the jury questions. Uzoukwu argued that the first of these questions warranted an unequivocal answer in the negative, relying on New York state law for the proposition that an individual has a constitutional right not to respond to police questioning and mere words cannot constitute the "physical" act required for the crime of obstruction. Defendants argued that:

> The relevant Park Rules should be included in response
> to Question No. 2 because—as this question
> illustrates—they are essential for the jury to make its
> determination whether there was probable cause to
> arrest for Obstruction of Governmental Administration.

App'x at 1060. Defendants also renewed their summary judgment motion for qualified immunity noting: "Indeed, based upon the questions presented by the

7

jury, it now appears that the Court may have to decide the issue of qualified immunity." App'x at 1062.

The next morning, the district court met with the parties before bringing in the jury and informed them that it had found a New York Court of Appeals case that it concluded confirmed that violations of park rules constitute a "a class B misdemeanor (*see* 56 RCNY 1–07(a); Penal Law § 70.15 (2)), the maximum penalty for which is 90 days' imprisonment and a $1,000 fine (*see* 56 RCNY 1–07(a) )." *People v. Davis*, 13 N.Y.3d 17, 21 (2009) (upholding a conviction for failing to comply with posted sign indicating city park's closing time was 9 p.m., where officer observed defendant in the park at 2:00 a.m.). The district court told the parties that it would add a supplemental instruction informing the jury that it could also find that the officers lawfully arrested plaintiff if they had probable cause to believe that he violated the park rules.

After much debate and over Uzoukwu's objection, the district court provided the following answer to the jury's first question:

> Refusal to answer police questions <u>alone, without more</u>, would not constitute obstruction of governmental administration. <u>Whether refusal to acknowledge or respond to police questions is considered obstruction of governmental administration depends on the totality of</u>

8

the circumstances as you find them. As I instructed you, a person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of <u>any independently unlawful act</u> . . . . A police officer's official function includes enforcing compliance with park and playground rules.

App'x at 1094-95 (emphases added).

The district court also answered the jury's final question about whether probable cause is eliminated where "a police officer inappropriately (e.g. due to bias) approaches an individual who then gives probable cause for arrest," explaining:

In response to this question I will refer you to my previous instruction that "the issue in this case is not about whether plaintiff was properly stopped, but whether his arrest was unlawful." Further, as I have instructed you, "the motive of the defendant police officers is not a factor for you to consider in determining whether there was probable cause. The only issue for you to decide is whether the was probable cause to arrest."

App'x at 1096. The district court then charged the jury that:

9

In assessing probable cause to arrest, I have one further instruction to provide you. . . . Defendants also contend that plaintiff had violated various New York City Park Rules and Regulations and that probable cause existed to arrest plaintiff for violations of the following rules, which constitute misdemeanors:

1. <u>No person shall fail, neglect or refuse to comply with the lawful direction or command</u> of any Police Officer, Urban Park Ranger, Parks Enforcement Patrol Officer, or other Department employee, indicated by gesture or otherwise.

2. <u>No person shall fail to comply with or obey any instruction, direction, regulation, warning, or prohibition</u>, written or printed, displayed or appearing on any sign, except such sign may be disregarded upon order by a Police Officer or designated Department employee. It shall be a violation of these rules to engage in disorderly behavior in a park. <u>A person in any park shall be guilty of disorderly behavior who engages in a course of conduct or commits acts that unreasonably alarm or seriously annoy another person</u>.

If, after considering all the evidence, you find that defendants had probable cause to arrest plaintiff for any of these offenses, even if plaintiff was not charged with that crime, or the crimes that I previously instructed you about—disorderly conduct or obstruction of government administration—then you must find in favor of the defendants with respect to the false arrest claim.

App'x at 1096-97 (emphases added).

At 10:07 a.m., the district court instructed the jury to begin its deliberations anew.  Thirty-four minutes later, at 10:41 a.m., the jury returned with a verdict finding in favor of the defendants on all claims.

**DISCUSSION**

**I.      Jury instructions.**

"We review de novo a claim of error in the district court's jury instructions and will set aside a judgment secured by an erroneous charge only if the appellant shows that the error was prejudicial in light of the charge as a whole. Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law. It is axiomatic, however, that a jury charge should be examined in its entirety, not scrutinized strand-by-strand." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006) (internal citations and quotation marks omitted).  As to supplemental instructions given by the district court, "[i]f a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given." *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir. 1989) (holding district court did not plainly err in giving unchallenged supplemental charge on "conscious avoidance," which correctly

11

stated the law, after deliberations had begun, where jury asked question that could not be addressed by yes or no answer)). However, "Rule 30's requirement that counsel be informed of the instructions to be given before closing argument is an important safeguard of the right to a full and fair trial by jury" and "the district court's discretion regarding supplementary instructions is not without limits." *Id*. at 196 (citing *United States v. Blackmon*, 839 F.2d 900, 910 (2d Cir. 1988) (holding it was "clearly prejudicial error to give a discretionary *Pinkerton* instruction at the close of the trial, upon the basis of which defense counsel made their summations, and then switch to a mandatory charge in response to an inquiry by the jury during its deliberations").

Both the jury's question and the district court's answer expressly addressed only the legal significance of plaintiff's refusal to acknowledge or respond to police "questions." Under New York law, it is clearly established that Uzoukwu's constitutionally protected silence could not constitute any element of the crime of obstructing governmental administration, even if such silence interfered with the officers' attempt to investigate whether Uzoukwu was violating park rules. Therefore, the district court should have simply answered "no." Alternatively, the district court should have stopped after issuing the first

sentence of its instruction. However, its subsequent qualification finds no support under New York law.

The crime of "obstructing governmental administration requires as an element of the crime that the accused act by one of three methods: (1) 'intimidation,' (2) 'physical force or interference,' or (3) 'any independently unlawful act.'" *People v. Case*, 396 N.Y.S.2d 841, 844 (1977). It is axiomatic that "only physical interference . . . is encompassed in the second method of obstruction." *Id.*; *In re Davan L.*, 666 N.Y.S.2d 1015, 1016 (1997) ("[T]he interference would have to be, in part at least, physical in nature."). Thus, "purely verbal interference may not satisfy the 'physical component under Penal Law § 195.05.'" *In re Davan L.*, 666 N.Y.S.2d at 1016; *see also Case*, 396 N.Y.S.2d at 844 ("[T]he statute has been uniformly interpreted to the effect that mere words alone do not constitute 'physical force or interference' such as to support the charge of obstructing governmental administration."). It plainly follows that refusal to respond to an officer's questions cannot satisfy the "interference" element of the charge for obstruction of governmental administration, because silence does not entail a physical act. *See In re Kezzia T.*, 709 N.Y.S.2d 401, 402 (1st Dep't 2000) ("Appellant's initial untruthfulness about the presence of a weapon

13

inside the apartment, followed by her refusal to disclose its location, do not satisfy the elements of obstructing governmental administration."); *People v. Tillman*, 706 N.Y.S.2d 819, 820-21 (City Ct. 2000) (dismissing charges for obstruction of governmental administration and resisting arrest where suspect in narcotics investigation ran from police after being stopped for questioning, because flight did not constitute "physical interference").

Nonetheless, if the district court wished to provide more guidance than a simple, unequivocal "no," it could have instructed the jury that "[w]hile mere words alone do not constitute physical force or interference, words coupled with actions are sufficient." *People v. Chang*, 901 N.Y.S.2d 909 (Crim. Ct. 2009) (citing *Davan L.*, 91 N.Y.2d at 91 (finding evidence sufficient to support charge of obstruction of governmental administration where teenager was instructed by police to leave the scene of undercover narcotics "buy operation," but instead rode bicycle towards known criminal activity and yelled to potential targets to warn them of police presence, thereby causing "a physical reaction and

14

dispersal" of the targets)).[2] Instead, the district court failed to convey to the jury that obstruction of governmental administration requires a physical act.

Moreover, the district court's answer significantly obscured the well-settled principle that, in New York, "[a]n individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime." *People v. Howard*, 430 N.Y.S.2d 578, 581 (1980); *see also People v. Grullon*, 862 N.Y.S.2d 810

---

[2] *Compare People v. Hamilton*, 787 N.Y.S.2d 679 (Crim. Ct. 2004) ("It is well settled that 'interference,' as contained in the statute, must be physical interference. However, it is not defendant's words alone that are the subject of the instant charge, but his words coupled with his refusal to move his truck so as to allow the police vehicle to respond to the citizen's complaint. A refusal to move can constitute physical interference."(internal citation omitted)), *and People v. Jimenez*, 525 N.Y.S.2d 482, 483 (Crim. Ct. 1988) (holding obstruction of governmental administration could be established by verbal act when combined with physical act in which group of young women were alleged to have physically placed themselves between police officer and the suspect he sought to question), *with In re Kendell R.*, 897 N.Y.S.2d 83, 84 (1st Dep't 2010) (holding that, where arrestees who had been either fighting or goofing around "failed to comply with a directive to break it up and go away," their "failure to comply with the order to disperse, without more, lacked the requisite intentional physical component" necessary to constitute the crime of obstructing governmental administration (internal citation omitted)), *and People v. Lupinacci*, 595 N.Y.S.2d 76, 77 (2d Dep't 1993) (dismissing indictment charging obstruction of governmental administration where "defendant was alleged to have struggled with the police to avoid being handcuffed, and walked away from the arresting officer, ignoring orders to stop" because the police were not authorized to attempt to detain the defendant under the circumstances).

15

(Crim. Ct. 2005) ("[W]hen this defendant refused further cooperation with the police, she did not obstruct governmental administration. . . ."). For this reason, refusal to answer police questions also cannot satisfy the "independently unlawful act" prong. *See People v. Perez*, 851 N.Y.S.2d 747, 749 (4th Dep't 2008) (holding evidence was legally insufficient to establish lawful arrest for disorderly conduct and obstructing governmental administration where defendant refused to cooperate with officers who knocked on his door while investigating origin of loud music emanating from his building because "Defendant was not required to respond to the officers' request for identification or to open his door to the officers"); *People v. Cameron*, 787 N.Y.S.2d 679 (Crim. Ct. 2004) (dismissing charges for obstructing governmental administration and disorderly conduct where police, who were canvassing for wanted suspect, repeatedly requested name and date of birth of defendant that resembled suspect, eventually leading defendant "to curse, yell and scream" as well as flail his arms in an attempt to avoid being placed in handcuffs). Indeed, it is well-established that a suspect's refusal to answer pedigree questioning is protected by the Fifth Amendment. *See United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992) (citation omitted) ("Though solicitation of pedigree information normally does not amount to

16

custodial interrogation, we see no basis for distinguishing silence in the face of pedigree questions from silence in the face of more substantive interrogation."); *United States v. Dell'Aria*, 811 F. Supp. 837, 844 (E.D.N.Y.) aff'd, 14 F.3d 591 (2d Cir. 1993) ("It is settled in this circuit that silence in the face of custodial questioning aimed at eliciting only pedigree information, even absent substantive inquires, may suffice as an invocation of Fifth Amendment rights.").

For substantially the same reasons, under New York law obstruction of governmental administration cannot rest upon refusal to provide identification. *See People v. Alston*, 805 N.Y.S.2d 258, 261 (Crim. Ct. 2005) ("[R]efusal to comply with a request for documentation is not an independently unlawful act that amounts to obstruction of governmental administration."); *Cameron*, 787 N.Y.S.2d 679 ("Plainly, ignoring an officer's request for identification is not a crime, nor does that act supply any such element."). "Were the law otherwise, it would follow that whenever any barrier is placed in the path of process and/or arrest, this class 'A' misdemeanor (obstructing) could be added. The effect of that added charge . . . is to divert attention from the initial alleged criminality or transgression." *People v. Offen*, 408 N.Y.S.2d 914, 916 (Crim. Ct. 1978) (holding defendant, whom officer desired to cite for littering, did not obstruct

governmental administration by ignoring officer's request for identification, and instead yelling "go f[uck] yourself" to the officer, walking away, entering his store, and refusing to open door to police).

The sole case defendants cite to support the district court's equivocal answer is inapposite because it does not involve a refusal to respond to police "questions." Rather, in *People v. Stumpp*, 505 N.Y.S.2d 758 (App. Term 1986), an appellate court affirmed a pub owner's conviction for obstruction of governmental administration where the pub owner had refused to give police officers access to his books and records, despite the fact that Alcoholic Beverage Control Law § 106(12) required him to make these records available during business hours. While *Stumpp* may share some superficial similarities with the present case, it provides no guidance that is responsive to the jury's articulated inquiry regarding the legal significance of a failure to answer police "questions." Nor does it justify the district court's instruction that the jury must consider the totality of the circumstances in determining "[w]hether refusal to acknowledge or respond to police questions is considered obstruction of governmental administration . . . ." *See, e.g., People v. Nunez*, 943 N.Y.S.2d 857, 866–67 (Crim. Ct. 2012) (holding obstruction charge facially sufficient where Occupy Wall Street

18

protester, who was trespassing in privately owned public park, physically interfered with officer's lawful evacuation order by sitting down and interlocking arms with others to prevent his removal); *Hamilton*, 787 N.Y.S.2d 679 ("Assuming, arguendo, that defendant's refusal to move his truck were insufficient to constitute physical interference, the allegations in the complaint nevertheless are adequate to support the charge of Obstructing Governmental Administration. The failure to obey the direction of a police officer is a traffic infraction under the New York City Traffic Rules. Thus, the complaint alleges an 'independently unlawful act' prohibited by Penal Law Section 195.05." (internal citations omitted)).

To the extent the district court's instruction implies that, under some circumstances, refusal to acknowledge or respond to police "questions" may be considered obstruction of governmental administration, the instruction given mischaracterized the law. Specifically, the district court's instruction implies that Uzoukwu's silence *did* constitute an obstruction of governmental administration in the present case by violating local ordinance 56 RCNY § 1-03(c)(1), which states that "[n]o person shall fail, neglect or refuse to comply with the lawful

direction or command of any Police Officer . . ."[3] However, there is simply no New York authority supporting the district court's inference that this local ordinance should be construed so as to limit a right that is clearly established under the New York State Constitution and therefore preempted by state law. Furthermore, even if 56 RCNY § 1-03(c)(1) criminalized Uzoukwu's failure to obey the officers' command that he leave the park if he was not accompanying a child, the district court's answer would still be misleading, as it referred only to Uzoukwu's refusal to respond to "questions," not his failure to obey a lawful instruction or order.

Although the district court enjoys broad discretion in determining how, and under what circumstances, to give an accurate instruction, this deference is only appropriate where "a supplemental charge is legally correct." *Civelli*, 883 F.2d  at 195. Here, the district court's answer provided the jury with an

---

[3]

| **Plaintiff:** | And then your Honor went down and begins to explain that it depends on the totality of the circumstances as you find them. I know that is a general principle on probable cause, but it confuses more as to the very specific question, which is the law of the State of New York, that refusal to answer a question from a police officer is not an obstruction of governmental administration. |
|---|---|
| **The Court:** | Do you have any support for the proposition that that's true in a park when an officer is attempting to enforce park rules and people are required to comply with the lawful direction or command of any police officer? |

inaccurate statement of the law by suggesting that refusal to answer police questions might, under some circumstances, constitute an obstruction of governmental administration. The confusion introduced by this statement was compounded by the district court's inappropriate invocation of the "totality of the circumstances" standard, as the standard is inapplicable where neither the relevant question nor answer mentioned probable cause.

Even if these statements of law had been correct in the abstract, the district court's persistent refusal to provide any concrete guidance on the physical act requirement or a suspect's constitutional right to refuse to answer police questions is particularly misleading when viewed in the context of the jury's manifest confusion over precisely these issues. *See, e.g.*, *United States v. Velez*, 652 F.2d 258, 262 (2d Cir. 1981) ("[T]he jury's note manifested its difficulties in comprehending the elements of the conspiracy offense. It was thus incumbent upon the trial court to clear them away with concrete accuracy. But here the district judge, over defense counsel's insistent objections, merely repeated what he several times described to the jury as the 'essential elements' of conspiracy, without informing them of the need to find willful membership. The judge, by his persistent refusal to recharge an 'essential' element at this late stage in the

jury's deliberations, could well have given the impression that willful membership was not an essential element, when in fact it represented the one legal requirement Velez strenuously argued the Government had not proved. Not only was the supplemental charge erroneous, but the trial court's refusal to give a supplemental instruction on this essential element prejudiced the defense." (internal citations and quotation marks omitted)).

Similarly, here it was incumbent on the district court to provide some useful instruction in response to the jury's cogent question regarding an issue of central importance to the case, particularly where plaintiff persistently objected to the charge given on each of these grounds.

"An erroneous instruction requires a new trial unless the error is harmless. An error is harmless only if the court is convinced that the error did not influence the jury's verdict." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (internal quotation marks omitted). There is no basis here to conclude that the erroneous instruction did not influence the jury's verdict. To the contrary, the instructions invited the jury to find for the defendants on the false arrest claim by inaccurately suggesting that they could find probable cause existed to arrest Uzoukwu for obstruction of governmental administration solely

22

because he refused to answer the questions of officers who were attempting to enforce park rules.

Moreover, on the record before us it cannot be said that the jury's verdict was otherwise inevitable. The jury was instructed that if it found probable cause for arrest on either the charge of governmental obstruction or the charge of disorderly conduct, it must enter a verdict in favor of the defendants. Jury questions one and two were simply whether Uzoukwu established his false arrest claim, and made no further inquiry as to whether probable cause existed for each charge. The jurors could have concluded, based on the erroneous instruction, that probable cause existed for Uzoukwu's arrest for obstruction of governmental administration without ever considering whether probable cause supported his arrest for disorderly conduct. Nor can the issue of whether probable cause existed to arrest for disorderly conduct[2] be decided as a matter of

---

[2] N.Y. Penal Law § 240.20 provides that "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. He engages in fighting or in violent, tumultuous or threatening behavior; or 2. He makes unreasonable noise; or 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or 5. He obstructs vehicular or pedestrian traffic; or 6. He congregates with other persons in a public place and refuses to comply with a

law. The parties presented radically different views of the events leading up to Uzoukwu's arrest. Defendants testified that after their initial questions went unanswered, their encounter with Uzoukwu escalated to the point where he was screaming, yelling obscenities and generally causing a scene that attracted a crowd. Uzoukwu, however, testified that because of recent surgery performed on his neck, he was physically incapable of screaming, such that when the officers asked him to yell for his children on the playground he "[did] not even have a voice to yell" due to recent surgery, he "couldn't scream loud for people to hear," and "[y]ou have to be [at] very close range to hear me what I'm saying." App'x at 512-13, 684, 696. This is sufficient to raise a question of material fact as to whether Uzoukwu's behavior provided probable cause to arrest him for disorderly conduct. Indeed, if the jury decided Uzoukwu's silence during the initial encounter was dispositive in establishing probable cause for his arrest, it would have been unnecessary for the jury to resolve any disputes over the subsequent chain of events in order to reach a verdict on the false arrest claim. Accordingly, we are compelled to vacate the verdict and remand this matter for a

lawful order of the police to disperse; or 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose."

24

new trial on the false arrest claim.

**II.    Uzoukwu's remaining claims.**

Uzoukwu also appeals from the district court's August 7, 2013 oral decision granting defendants partial summary judgment as to his claims of municipal liability and state law claims for assault, battery, and malicious prosecution. We have examined his arguments regarding those claims and find no error with the district court's decision, and thus affirm the grant of partial summary judgment on those claims.

## CONCLUSION

For the reasons given above, we vacate the verdict and remand for a new trial consistent with this opinion.  Uzoukwu's September 10, 2015 motion to expedite the decision in this appeal is denied as moot.