17-0363-cr
U.S. v. Gracesqui

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 5th day of April, two thousand eighteen.

Present:      JOHN M. WALKER, JR.,
             ROSEMARY S. POOLER,
                      *Circuit Judges*.
             DENISE COTE,[1]
                      *District Judge*.

_____

UNITED STATES OF AMERICA,

                      *Appellee*,

              v.                                              17-0363-CR

JOSE LUIS GRACESQUI, AKA Luis Perez, AKA Ramon Ortiz, AKA Onel Colon, AKA Muffler, [2]

                      *Defendant-Appellant*.

_____

Appearing for Appellant:      Anthony Cecutti, New York, N.Y.

---

[1] Judge Denise Cote, United States District Court for the Southern District of New York, sitting by designation.

[2] The Clerk is respectfully directed to amend the caption as above.

Appearing for Appellee:     Brendan F. Quigley, Assistant United States Attorney (Rebekah Donaleski, Laurie Korenbaum, Daniel B. Tehrani, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Defendant-Appellant Jose Luis Gracesqui appeals from the January 30, 2017 judgment of the United States District Court for the Southern District of New York (Castel, *J.*), convicting him of three charges related to the murder of Richard Diaz on July 19, 1999, and sentencing him to life imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Gracesqui first argues that the district court erred by concluding that the government had presented sufficient evidence to sustain a conviction on Count One of the indictment, which charged that Gracesqui killed Diaz while engaged in a conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. "We review challenges to the sufficiency of evidence *de novo*, and will uphold a conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dupree*, 870 F.3d 62, 78 (2d Cir. 2017) *cert. denied sub nom. Gill v. United States*, No. 17-7584, 2018 WL 659984 (U.S. Feb. 26, 2018) (quoting *United States v. Rosemond*, 841 F.3d 95, 113 (2d Cir. 2016)). In assessing the sufficiency of the evidence, we "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Dupree*, 870 F.3d at 78 (quoting *Rosemond*, 841 F.3d at 113).

For a conspiracy charge to withstand a sufficiency of the evidence challenge, "[t]he record must … permit a rational jury to find: (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) *cert denied* 555 U.S. 1122 (2009) (citations omitted). In *Santos*, we considered a similar sufficiency of the evidence challenge regarding a 21 U.S.C. § 848(e)(1)(A) conviction, and concluded that the statute had two elements: "one drug offense and one killing." *Santos*, 541 F.3d at 69. As to the independent drug offense, the relevant drug conspiracy statute does not require an overt act. *Id.* at 68. Accordingly, "the conspiracy itself—and no act in furtherance of it, homicidal or otherwise— serves as the predicate drug offense under section 848(e)(1)(A)." *Id.*

Gracesqui, like the defendant in *Santos*, argues that there is insufficient evidence to sustain the jury finding that he knew of and joined a drug conspiracy. But in *Santos* we concluded that a largely indistinguishable record was sufficient. Here as there, a witness testified that an accomplice explained to the defendant that the plan was to retaliate for a drug-related

2

theft. *Id.* at 65-66. In both cases, the testimony reflected that, in this initial planning conversation, an individual involved in ongoing drug trafficking told the defendant that a higher-level member of the drug trafficking organization had been robbed of drugs or drug proceeds. *Id.* at 66. The defendants in both cases agreed to assist in the retaliation, and ultimately attempted to carry out the plan by committing murder—though in both cases, the victims who were killed were not the intended targets of the retaliation. *Id.* We see no basis to distinguish *Santos*, given the striking similarity between the record evidence in both cases. Accordingly, drawing all inferences in the government's favor, as we must, there was sufficient evidence for the jury to conclude that (i) Gracesqui knew that the retaliation would benefit a large drug trafficking organization, and (ii) by agreeing to the plan and ultimately murdering an individual, Gracesqui joined the conspiracy.

Further, Gracesqui's reliance on *United States v. Atehortva*, 17 F.3d 546 (2d Cir. 1994), is misplaced. There, we found that there was insufficient evidence to sustain a drug conspiracy charge. The government did not present any evidence that the defendant was informed of the drug-related purpose of the kidnapping, and the government's theory of knowledge rested largely on the assertion that the defendant simply "must have known" about the narcotics connection. *Id.* at 550-51. Here, by contrast, one of Gracesqui's accomplices testified directly to a conversation where it was explained to Gracesqui that the purpose of the retaliation was to avenge a drug theft. Accordingly, here, the government submitted evidence that Gracesqui was aware of the drug conspiracy, and the jury was entitled to credit this testimony.

Gracesqui next argues that certain supplemental jury instructions erroneously allowed the jury to convict him on an aiding and abetting theory related to the Diaz murder, even though the government's theory of the case was that Gracesqui was the shooter. Gracesqui does not challenge the initial charge, only the supplemental instructions. "We review de novo a claim of error in the district court's jury instructions and will set aside a judgment secured by an erroneous charge only if the appellant shows that the error was prejudicial in light of the charge as a whole. Jury instructions are erroneous if they mislead the jury or do not adequately inform the jury of the law. It is axiomatic, however, that a jury charge should be examined in its entirety, not scrutinized strand-by-strand." *Uzoukwu v. City of New York*, 805 F.3d 409, 414 (2d Cir. 2015) (quoting *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006)).

"[T]he district court must exercise special care to see that inaccuracy or imbalance in supplemental instructions do not poison an otherwise healthy trial. This is especially true since the judge's last word is apt to be the decisive word." *Tart v. McGann*, 697 F.2d 75, 77 (2d Cir. 1982) (internal quotation marks and citations omitted). "We will vacate a conviction if the initial jury instructions are faulty, the jury expresses confusion, and the court's supplemental instruction fails to alleviate the jury's concerns or only adds to the already-existing confusion … Even if an initial instruction is not itself erroneous or highly confusing, a supplemental instruction prompted by a jury question may be so muddled as to warrant vacatur." *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014). However, "[i]f a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given." *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir. 1989).

Count One of the indictment charged that Gracesqui, while acting with "others known and unknown, intentionally and knowingly killed, and counseled, commanded, induced, procured, and caused the intentional killing of Richard Diaz," in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. Supp. App'x at 26. The district court's initial charge tracked this language, which is derived from 21 U.S.C. § 848(e)(1)(A). Gracesqui does not challenge this initial charge, but only certain supplemental charges, in which the district court provided the dictionary definition of the word "act" and directed the jury to read the initial charge again. Since these supplemental instructions were legally sound and added little to the original charge, they were not erroneous. *See United States v. Martinez*, 419 F. App'x 34, 36-37 (2d Cir. 2011) (summary order) (affirming similar supplemental instructions on 21 U.S.C. § 848(e)(1)(A) charge). Additionally, Gracesqui's assertion that the jury instructions constituted a prejudicial variance from the indictment is meritless: the indictment charged aiding and abetting liability in the express language of the charge, and included a 18 U.S.C. § 2 charge.

Gracesqui also argues that the joinder of charges related to the Diaz murder with a charge related to the murder of John Ochoa was erroneous under Fed. R. Crim. P. 8(a) and 14(a). Under Rule 8(a), "[w]e review the District Court's order to allow joinder of the two counts *de novo*." *United States v. Lee*, 549 F.3d 84, 94 (2d Cir. 2008). Joinder is proper if the offenses have a "sufficient logical connection." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990). We conduct a "twofold inquiry: [1] whether joinder of the counts was proper, and if not, [2] whether misjoinder was prejudicial to the defendant." *United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012) (quoting *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008)). Denial of a Rule 14 motion for severance, on the other hand, is reviewed for abuse of discretion. *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004). Denials of Rule 14 motions "will not be overturned unless the defendant demonstrates that the failure to sever caused him 'substantial prejudice' in the form of a 'miscarriage of justice.'" *Id.* (quoting *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991)).

Here, joinder was proper. While the Ochoa murder occurred at a different time and place than the Diaz murder, and was not part of a continuous scheme, both murders were drug-related, and both involved Gracesqui and Julio Guerrero. Thus the evidence about the relationship between the two, and their shared history of criminal activity that led to the murders, would have been relevant to both trials. Finally, the fact that the jury acquitted on the only charge related to the Ochoa murder is a strong indication that Gracesqui was not unduly prejudiced by the joinder.

Last, Gracesqui contends that the district court improperly admitted evidence of prior bad acts under Fed. R. Evid. 404(b), and that the cumulative impact of the evidence was so prejudicial as to require a new trial. "A district court's evidentiary rulings are subject to review for abuse of discretion." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011). "This Circuit has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (quoting *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir 2004). "The district court can, for example, admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Dupree*, 870 F.3d at 76 (quoting *United States v. Diaz*, 176

4

F.3d 52, 79 (2d Cir. 1999)) (internal quotation marks omitted); *see also United States v. Reifler*, 446 F.3d 65, 91 (2d Cir. 2006). "We have, however, emphasized that this inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence when … it is offered to prove propensity." *Scott*, 677 F.3d at 79.

"When reviewing evidence admitted pursuant to Rule 404(b), we consider whether: (1) the prior crimes evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction." *Curley*, 639 F.3d at 56-57 (quoting *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009)) (internal quotation marks omitted).

Gracesqui primarily challenges the admissions of evidence of prior criminal activity and gun and weaponry possession. However, the evidence of prior criminal activity was not unfairly prejudicial under our precedents. We have previously permitted similar background evidence to show the evolution of the relationship between participants in the crime, and demonstrate how discussions of extreme criminal activity—that might otherwise seem farfetched—were not atypical for the defendant. *Dupree*, 870 F.3d at 76-77; *Reifler*, 446 F.3d at 91-93. Further, the gun- and weaponry-related evidence was clearly relevant to a proper purpose: namely, to show that Gracesqui had access to the specific type of gun used in the murders, and possessed a bulletproof vest, which an eyewitness testified was worn by Diaz's murderer. Finally, the district court issued appropriate limiting instructions. Accordingly, the district court did not abuse its discretion in admitting this evidence.

We have considered the remainder of Gracesqui's arguments and find them to be without merit.  Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk