Elizabeth M. ACOSTA, Plaintiff–
Appellant,

v.

Gary HILL; Joseph Krouss; Eric Staf-
ford; Raphael Cimmarusti; Elite
Show Services; Vladimir Atabekian;
Donald Williams; City of San Diego,
Defendants–Appellees.

No. 05–56575.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 2007.

Filed Oct. 17, 2007.

Meir J. Westreich, Pasadena, CA, for
the plaintiff-appellant.

Robert J. Walters, Deputy City Attor-
ney; Michael J. Aguirre, City Attorney,
City of San Diego, San Diego, CA, for
defendants-appellees City of San Diego,
Gary Hill, Joseph Krouss and Eric Staf-
ford.

Matthew R. Rutherford, Law Offices of
Matthew R. Rutherford, Lemon Grove,
CA, for defendants-appellees Elite Show
Services, Vladimir Atabekian and Donald
Williams.

Before: ALEX KOZINSKI and
RICHARD C. TALLMAN, Circuit Judges,
and BRIAN E. SANDOVAL,* District
Judge.

KOZINSKI, Circuit Judge:

Bouncers physically removed Acosta
from Murphy's Club, a bar in San Diego's
Qualcomm Stadium. Stadium security was
notified, and two security guards ap-
proached Acosta. She refused to show the
guards identification or accompany them
to the security office. San Diego police
officers then intervened. Officer Hill told
Acosta that she had been ejected from the
stadium. After he told Acosta at least
three times that she would be arrested if

---

* The Honorable Brian E. Sandoval, United
States District Judge for the District of Neva-
da, sitting by designation.

she didn't leave the stadium, Acosta kicked a security guard and Officer Hill. Officer Hill then placed her in a carotid restraint hold. Acosta became compliant without losing consciousness, and she was handcuffed. Soon, however, the rumbustious Acosta began kicking again, so Officer Hill slammed her to the ground and tied her legs together. She was then taken to the holding area by Officers Krouss and Stafford.

Acosta filed a 42 U.S.C. § 1983 claim against the security guards, police officers and the City of San Diego, alleging various constitutional violations including unconstitutional use of deadly force under the Fourth Amendment. The jury was given an excessive force instruction based on a reasonableness standard-but not a separate deadly force instruction. The jury found for defendants. Acosta appeals, arguing that the jury should have been given a separate deadly force instruction. We have jurisdiction under 28 U.S.C. § 1291.

*Scott v. Harris*, — U.S. —, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), forecloses Acosta's deadly force argument. *Scott* held that there is no special Fourth Amendment standard for unconstitutional deadly force. *See id.* at 1777–78. Instead, "all that matters is whether [the police officer's] actions were *reasonable.*" *Id.* at 1778 (emphasis added). Here, the jury was given an excessive force instruction and found for Officer Hill; it must therefore have determined that the officer acted reasonably. Under *Scott*, that is the end of the inquiry. The district court didn't err by refusing to give a separate deadly force instruction.

We had previously held that "[a]n excessive force instruction is not a substitute for a ... deadly force instruction." *Monroe v. City of Phoenix*, 248 F.3d 851, 859 (9th Cir.2001). We reached this conclusion based on the observation that "the Su-

preme Court ... established a special rule concerning deadly force." *Id.* at 860 (quoting *Vera Cruz v. City of Escondido*, 139 F.3d 659, 661 (9th Cir.1997)). *Scott* explicitly contradicts that observation. 127 S.Ct. at 1777–78. *Scott* controls because it is "intervening Supreme Court authority" that is "clearly irreconcilable with our prior circuit authority." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc). *Monroe*'s holding that an excessive force instruction based on the Fourth Amendment's reasonableness standard is not a substitute for a deadly force instruction is therefore overruled. *See Miller*, 335 F.3d at 900.

Acosta's remaining arguments are addressed in the accompanying memorandum disposition.

**AFFIRMED.**