18-2909
*Hill v. Quigley*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of September, two thousand nineteen.

PRESENT:    PETER W. HALL,
            DEBRA ANN LIVINGSTON,
                *Circuit Judges*,
            JANE A. RESTANI,
                *Judge.**

-----------------------------------------------------------------------

CAROL HILL, as Administratrix of the Estate of Tyjuan
Hill, deceased,

       *Plaintiff-Appellant,*

       v.                                                    No. 18-2909

SGT. PATRICK QUIGLEY, Sh. #5,

       *Defendant-Cross-Claimant-Appellee.***

-----------------------------------------------------------------------

*Judge Jane A. Restani of the United States Court of International Trade, sitting by designation.
**The Clerk of Court is respectfully requested to amend the caption as stated above.

1

FOR APPELLANT:                                    DAVID B. SHANIES, David B. Shanies Law
                                                  Office, New York, NY.

FOR APPELLEE:                                     MELANIE T. WEST (Richard Dearing, Claude S.
                                                  Platton, *on the brief*), *for* Zachary W. Carter,
                                                  Corporation Counsel of the City of New York,
                                                  New York, NY.

Appeal from a judgment of the United States District Court for the Southern District

of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,**

**AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Appellant Carol Hill ("Hill") brought this action under 42 U.S.C. § 1983 following the

fatal shooting of her son, Tyjuan Hill ("Tyjuan"), by Defendant-Appellee Patrick Quigley, a

New York City police officer.  Hill appeals from the final judgment of the United States

District Court for the Southern District of New York (Hellerstein, *J.*), entered on April 27,

2018 following the jury's defense verdict, and from the District Court's August 28, 2018

order denying, pursuant to Fed. R. Civ. P. 59, Hill's motion for a new trial.  We assume the

parties' familiarity with the facts, record of prior proceedings, and arguments on appeal,

which we reference only as necessary to explain our decision to affirm.

**I.**

The following facts are undisputed unless otherwise noted.  In September 2012, police

officers attempted to arrest Tyjuan during a prostitution sting operation.  Tyjuan fled on foot,

chased by several officers.  One eventually tackled him, and a struggle ensued.  Quigley arrived

last at the scene of the struggle and was able to handcuff one of Tyjuan's wrists but not the

other.  Then, according to Quigley but disputed by Hill, Tyjuan pulled a handgun from his

waistband and pointed it backwards at the officers. Quigley shot Tyjuan in the back of the head while Tyjuan was pinned face down on the ground.

## II.

Hill challenges two jury instructions and one evidentiary ruling by the District Court.

### A. Jury Instructions

We generally review a district court's jury instructions *de novo*, granting a new trial if we find an error that is not harmless. *Rasanen v. Doe*, 723 F.3d 325, 331 (2d Cir. 2013). "If, however, the challenging party failed to object to the charge at trial, we review for plain error." *Id.* at 332. The plain error standard requires Hill to show that the error was "fatal to the integrity of the trial." *Anderson v. Branen*, 17 F.3d 552, 558 (2d Cir. 1994).

First, Hill argues that the District Court plainly erred by failing to give the deadly force instruction in restrictive terms as required by *Rasanen*, 723 F.3d 325, and *Callahan v. Wilson*, 863 F.3d 144 (2d Cir. 2017).[1] *Rasanen* and *Callahan* hold that when a plaintiff alleges deadly force in violation of the Fourth Amendment, the court must instruct the jury that the use of deadly force is "*unreasonable unless* the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others," rather than stating that an officer "may" use deadly force "if" the officer has such probable cause. *Callahan*, 863 F.3d at 151 (quoting *Rasanen*, 723 F.3d at 334). Here, the District Court charged the jury using the permissive "may/if" language prohibited by *Rasanen* and *Callahan*.

---

[1] The plain error standard applies because, although Hill's counsel requested a restrictive instruction in addition to the permissive instruction, Hill's counsel "never so much as cited either" *Rasanen* or *Callahan*, "never explained why such an instruction was required," and "elsewhere expressed satisfaction with the excessive force instruction actually given." *Rasanen*, 723 F.3d at 332–33; *see* Fed. R. Civ. P. 51(c)(1); Sp. App. 6–7; J. App. 945 ("I think that correctly states the standard").

3

Considering the probable cause instruction "in light of the charge as a whole," however, we conclude that the District Court's permissive framing is not plain error. *Id.* at 148.

This Court's concern regarding the permissive "may/if" language is that it does not by itself "convey that an officer's use of deadly physical force is reasonable, and therefore legally permissible, only in a specific circumstance." *Callahan*, 863 F.3d at 151. In this case, the District Court's charge, as a whole, conveyed to the jury that Quigley's use of deadly physical force was reasonable only if Quigley had probable cause to believe Tyjuan posed a significant threat of death or serious bodily injury. After instructing the jury that it must decide whether Quigley's use of force was reasonable, the District Court went on to state that "[t]he question is whether the totality of circumstances provided probable cause for an officer to believe that he or others faced a significant threat of death or serious physical harm." J. App. 1031. The court then read the definition of probable cause, repeating it for emphasis. Finally, the District Court listed several factors irrelevant to the jury's reasonableness determination, and repeated, "If Patrick Quigley had probable cause to believe that he or others faced a serious threat of serious harm in arresting Tyjuan Hill, then Patrick Quigley's use of lethal force was reasonable." *Id.* at 1032. Given the absence of any instruction suggesting that the use of force could be found reasonable on some other basis and the District Court's emphasis on the requisite probable cause—including the repetition of the probable cause standard and the instruction that whether Quigley had probable cause was "the" question—the District Court's failure to frame the probable cause instruction in restrictive terms did not "deprive[] the jury of adequate legal guidance to reach a rational

4

decision on [the] case's fundamental issue" or "undermine the very integrity of the trial." *Rasanen*, 723 F.3d at 334–35 (internal quotation marks omitted).

Neither *Rasanen* nor *Callahan* mandates a contrary conclusion. We found plain error in the jury instructions in *Rasanen*, but the district court's error in that case was more egregious. The trial court's instruction focused on objective reasonableness and failed to instruct the jury in any manner regarding the probable cause justification discussed above. *Id.* at 334. *Callahan* dealt with a permissive instruction substantively identical to the one in this case, but *Callahan* is distinguishable in two important respects. First, the plaintiffs in *Callahan* preserved their objection, such that the instruction at issue was reviewed *de novo* for any error that was not harmless. *Callahan*, 863 F.3d at 150 n.7. Second, the error in the formulation of the deadly force instruction in *Callahan* was compounded, rather than cured, by the rest of the excessive force instruction. *Id.* at 150. The rest of the instruction was largely identical to the general excessive force instruction that applies in situations involving non-deadly force; the court in *Callahan*, unlike the court in this case, did not instruct the jury that "[t]he question is whether the totality of circumstances provided probable cause for an officer to believe that he or others faced a significant threat of death or serious physical harm." J. App. 1031.[2]

Hill's second assertion of instructional error, properly raised in an objection below, is that the District Court's instruction on intent was inconsistent with *Dancy v. McGinley*, 843

---

[2] Hill contends that the District Court's *Rasanen/Callahan* error was compounded by the court's confusing summary of the defense case, in which the court noted Quigley's claims that Quigley was "acting within his immunity as a police officer," that he "shot in self-defense," and that "Hill was resisting arrest." J. App. 1027, 1029. We are unpersuaded by Hill's arguments regarding these remarks for the reasons ably stated by the District Court.

5

F.3d 93 (2d Cir. 2016). *Dancy* involved an excessive force claim against a police officer who broke the plaintiff's jaw bone while bending the plaintiff over the hood of a patrol car. The jury found in favor of the officer. On appeal, the plaintiff argued he was entitled to a new trial because the jury charge erroneously implied that the plaintiff was required to prove that the officer intentionally broke the plaintiff's jaw. This Court agreed with the plaintiff, finding prejudicial error in the district court's instruction "that, to impose liability, [the jury] was required to find that Williams 'acted intentionally or recklessly' rather than 'merely negligent[ly]' in performing the acts alleged." *Dancy*, 843 F.3d at 116 (quoting jury charge). That instruction was confusing, we held, because a plaintiff alleging excessive force need not prove that the officer "intended the *results* of his actions or consciously disregarded their *consequences*." *Id.* at 118 (emphasis in original).

Here, the District Court's intent instruction bears some similarity to the erroneous instruction in *Dancy*. But even assuming the District Court's instruction is error under *Dancy*, it is harmless error. In *Dancy*, the instructional error was not harmless because the police officer's lawyer suggested at trial that the broken jaw was unintentional, placing intent at issue. *Id.* at 119. Here, intent was not at issue at trial. The defense theory was that the use of lethal force was justified—not that the shooting was accidental. Quigley described the shooting as an intentional act. Thus, to the extent the District Court failed clearly to convey that Quigley could be held liable even if he unintentionally caused Tyjuan's death, that error is harmless.

Hill contends that intent was at issue because "Hill made clear to the District Court that she wanted to argue that [Quigley] may have pulled the trigger *unintentionally*" and

6

"[a]mple evidence supported" that theory. Appellant Br. 31. That argument is meritless. Hill's counsel did not actually argue to the jury that the shooting could have been accidental. On the contrary, Hill's counsel emphasized in summation that the shooting was intentional. Nor does the record support Hill's assertion that ample evidence supported an accidental shooting theory. Hill identifies no reason to think the jury found in favor of Quigley because it believed the shooting to be unintentional.

## B. Evidentiary Ruling

Hill sought to introduce evidence of 911 calls placed by three eyewitnesses. The District Court, pursuant to Fed. R. Evid. 403, conditionally excluded the 911 calls placed by Darious Smith and Suzette Smoot, ruling that this evidence would be admitted only if Smith or Smoot were impeached on cross-examination. Although Hill appears to be challenging the exclusion of both calls, Hill's brief on appeal focuses on the Smith call and advances no argument specific to the Smoot call.

"We review a district court's evidentiary rulings for abuse of discretion," and reverse only if an abuse of discretion affects a party's substantial rights. *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999). We find no abuse of discretion in the District Court's determination that Smith's 911 call "did nothing more than restate Smith's in-court testimony," had "limited probative value," was "cumulative," and was "likely to create a danger of unfair prejudice to defendant" due to its "emotional, frantic nature." Sp. App. 19–20.

Hill asserts that Smith's 911 call was probative and not cumulative because it "showed genuine emotion." Appellant Br. 40. That argument lacks merit. Whether evidence is cumulative turns on whether it is offered to prove the same facts that other evidence tends to

prove. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997) ("[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point."). Smith's 911 call went to the same facts about the struggle and shooting that were covered in Smith's in-court testimony, namely, that Tyjuan was tackled by about half a dozen police officers and did not have a gun in his hand at any point during the struggle. That the call is emotional supports the District Court's determination that it is prejudicial. Here, unlike in *United States v. Scully*, 877 F.3d 464 (2d Cir. 2017), the recording of Smith's 911 call was not critical to the plaintiff's case, and it is not "difficult to identify what unfair prejudice that [recording] would have imposed" on Quigley. *Id.* at 474.[3]

Finally, Hill contends that the District Court's "*post hoc*" Rule 403 reasoning was a pretext for improperly excluding evidence based on its hearsay character. Appellant Br. 39. That contention is unsupported by the record, which shows that the District Court ruled on the 911 call pursuant to Rule 403. The District Court addressed Rule 403 only after discussing the hearsay issue and acknowledging the applicability of the hearsay exceptions invoked by Hill's counsel.

---

[3] Contrary to Hill's claim, defense counsel did not improperly impeach Smith's credibility during closing arguments. Defense counsel argued that given Smith's vantage point, the jury should question Smith's certainty that there was no gun. That argument did not call Smith's credibility into question in any way that playing the 911 recording might have rehabilitated.

## III.

We have considered all of Hill's remaining arguments and have found in them no basis for reversal.  Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court