**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALEB SMITH, by and through his Guardian Ad Litem; TAMOSHIA MASON, individually and as Co-Successor-in-Interest to Decedent; K. S., individually and as Co-Successor-in-Interest to Decedent; TIFFANY TRAMMELL, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> CITY OF HAYWARD, a municipal corporation; CHRISTOPHER SUOZZO, in his individual capacity as a police officer for the City of Hayward; DYNATON TRAN, in his individual capacity as a police officer for the City of Hayward; MICHAEL MILLER, in his individual capacity as a police officer for the City of Hayward, <br><br> Defendants - Appellants. | No. 24-7541 <br><br> D.C. No. 4:21-cv-08467-YGR <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted October 20, 2025
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: GOULD, OWENS, and BUMATAY, Circuit Judges.
Dissent by Judge BUMATAY.

Defendant-Appellants Officers Michael Miller, Christopher Suozzo, and Dynaton Tran appeal from the district court's denial of their motion for summary judgment based on qualified immunity.[1]  We have jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine.  *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985).  As the parties are familiar with the facts, we need not recount them here.  We affirm in part and dismiss in part.

We review the district court's denial of qualified immunity de novo.  *Peck v. Montoya*, 51 F.4th 877, 884 (9th Cir. 2022).  We lack jurisdiction to assess the sufficiency of the evidence supporting the district court's finding that genuine issues of material fact exist.  *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

1. The district court found genuine disputes of material fact regarding whether the Officers violated Smith's Fourth Amendment rights, including whether Smith's vehicle posed an immediate threat to the Officers.  Where the district court determines that "genuine issues of material fact [exist], such determinations are not reviewable on interlocutory appeal."  *Ames v. King County*, 846 F.3d 340, 347 (9th Cir. 2017).  Yet the Officers improperly challenge the

---

[1] The City of Hayward lacks standing to challenge the district court's denial of qualified immunity to the Officers.  *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 41 (1995).

district court's factual determinations, asking us to adopt their version of events rather than view the facts "in the light most favorable to the plaintiff." *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020). We thus lack jurisdiction to review the Officers' factual arguments and must accept the district court's conclusion that material factual disputes exist. *Ames*, 846 F.3d at 347.

2. The district court properly concluded that a reasonable jury could find that the Officers violated Smith's Fourth Amendment rights. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Ames*, 846 F.3d at 347.

We view the facts in the light most favorable to Smith: the Officers were each either out of the Volvo's path or in a position to step away; the Volvo, pinned between the SUVs, moved slowly; and Smith did not accelerate until after the Officers fired. A reasonable jury could find that the Officers did not face an immediate threat of serious physical harm and that the use of deadly force was objectively unreasonable. The Officers could have remained in safe positions or moved to safety rather than deploy deadly force. Accordingly, a reasonable jury could conclude that the Officers violated the Fourth Amendment.

3. The district court correctly determined that as of March 16, 2021, it was clearly established that officers could not use deadly force against a slow-moving vehicle when the officers could easily step out of the vehicle's path. A right is clearly established when "existing law . . . placed the constitutionality of the

officer's conduct beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citations omitted). Precedent must hold that the challenged conduct is a constitutional violation "under facts not distinguishable in a fair way from the facts presented in the case at hand." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The rule prohibiting the Officers' conduct was squarely established in *Orn v. City of Tacoma*, 949 F.3d 1167, 1175–76 (9th Cir. 2020).

In *Orn*, decided more than a year before this incident, we held that a jury could find deadly force unreasonable because "the car was moving slowly enough that the officer could have avoided any risk of injury by simply stepping to the side." *Id.* at 1179 (internal quotation marks omitted). We explained that "[a] moving vehicle can of course pose a threat of serious physical harm, but only if someone is at risk of being struck by it." *Id.* at 1174.

Viewing the evidence in the light most favorable to Smith, the facts here closely resemble those in *Orn*. Smith's vehicle, pinned between two SUVs, moved slowly. All three Officers had the opportunity to remain in a safe position, step back, or reverse away from Smith's path. Officer Suozzo stepped laterally *toward* the gap to fire, demonstrating he was not in immediate danger. Officer Tran fired from inside his vehicle when the Volvo was lateral to him. Finally, the initial vehicle contact was minor, and Smith did not accelerate until after he was shot. Any acceleration made by Smith toward the Officers was slow and thus did not

pose a risk of serious harm under *Orn*. 949 F.3d at 1174.

The Officers cite *Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020), *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), and *Plumhoff v. Rickard*, 572 U.S. 765 (2014). These cases are distinguishable. *Monzon* and *Plumhoff* involved drivers who led police on high-speed chases exceeding 100 miles per hour. *Monzon*, 978 F.3d at 1157; *Plumhoff*, 572 U.S. at 769, 776. *Wilkinson* involved poor visibility and slippery ground, circumstances irrelevant here. 610 F.3d at 552.

Viewing the facts in the light most favorable to Smith, the Officers' conduct on March 16, 2021 violated clearly established law. We affirm the district court's denial of qualified immunity on the Fourth Amendment claim.

4. We decline to exercise pendent jurisdiction over the state law claims, which are not "inextricably intertwined" with the qualified immunity determination. *Andrews v. City of Henderson*, 35 F.4th 710, 720 (9th Cir. 2022). We also lack jurisdiction to review the district court's evidentiary ruling excluding the Officers' post-shooting statements. *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1342 (9th Cir. 1985).

5. We **AFFIRM** the district court's denial of qualified immunity on the Fourth Amendment excessive force claim and **DISMISS** for lack of appellate jurisdiction the Officers' remaining challenges.

**AFFIRMED IN PART; DISMISSED IN PART.**

No. 24-7541, *Smith v. City of Hayward*
BUMATAY, Circuit Judge, dissenting:

Are officers entitled to fire at a suspect coming directly at them with his vehicle? Because the answer must be yes, I respectfully dissent.

1. "In evaluating a Fourth Amendment claim of excessive force, we ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (simplified). We examine the totality of circumstances based on three non-exclusive factors: (1) the "severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

Each of the *Graham* factors shows that Officers Michael Miller, Christopher Suozzo, and Dynaton Tran's conduct was reasonable. First, the "most important *Graham* factor"—whether Caleb Smith, Jr. posed an immediate threat—weighs strongly in the officers' favor. *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019). Smith operated his Volvo as a deadly weapon against the officers. *See United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) (An automobile "can be used as a deadly weapon" and "inflict deadly force on a person."); *see also Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020) ("A moving vehicle can of

1

course pose a threat of serious physical harm . . . if someone is at risk of being struck by it.").

Even in the light most favorable to Smith, it is uncontested that: After Smith rammed Officer Tran's vehicle, he backed up—seeking room to maneuver around the officers' attempted blockade. The officers then exited or leaned out of their cars, pointing their guns at him and repeatedly ordering him to surrender. Instead of complying with the officers' orders, as the district court found, he accelerated the Volvo at them. Only then did officers fire their service weapons at Smith.[1]

Because of the close proximity to Smith's car and the risk that he possessed a gun, the officers were in reasonable fear of their lives—whether they were positioned outside their vehicles or seated in the driver's seat. Officers don't have "to wait and be seriously injured or killed before exercising [their] judgment and bringing the situation under control." *Monroe v. City of Phoenix*, 248 F.3d 851, 862 (9th Cir. 2001) (overruled on other grounds in *Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007)). They just need "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Orn*, 949 F.3d at 1174 (simplified).

---

[1] The majority is simply wrong that Smith did not accelerate until after the officers fired. The district court found otherwise and even Smith's counsel conceded this at oral argument. It's uncontested that Smith's Volvo moved forward toward the officers and then the officers fired—at which point the vehicle quickly slammed into the officers' vehicle. So everyone, except the majority, agrees Smith started moving toward the officers first. Further, officers are not expected to be Spiderman—able to leap out of the way of a moving car—as the majority apparently believes.

2

Reasonable officers would know that a car "could accelerate dangerously and without notice at any moment"—even if it only accelerated over a short period. *Monzon v. City of Murrieta*, 978 F.3d 1150, 1160 (9th Cir. 2020). That Smith accelerated directly at the exposed officers—threatening to ram them as he attempted to escape—established the existence of an immediate threat enough to meet the requirements under this factor.

The severity of the crime also favors the officers. Here, this factor serves "as a proxy for the danger a suspect poses at the time force is applied." *Browder*, 929 F.3d at 1136. The underlying alleged crimes here—violent, armed robberies and a home invasion—are serious felonies. Armed violent crimes like burglary "are considered to carry an inherent risk of violence." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1163 (9th Cir. 2014). The officers had good reason to believe that the Volvo's driver was involved in armed violence and so the prospect that Smith was armed was reasonable. And sure enough, Smith possessed a firearm in his car. So while Smith chose to use his car as a deadly weapon—instead of his gun—this factor shows the officers' reasonableness.

Finally, whether the suspect was "actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, clearly favors the officers. Smith repeatedly tried to escape and resisted arrest, first accelerating at Officers Miller and Suozzo's Tahoe and then, after being boxed in, backing up, disregarding the officers'

3

warnings to surrender, and accelerating at them, heedless of the harm he posed to the exposed officers. *Cf. Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 919–20 (9th Cir. 2024).

2. In any case, the officers' use of force in self-defense wasn't prohibited by clearly established law. To be clearly established, it must be "sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (simplified). This "demanding" requirement "protects 'all but the plainly incompetent or those who knowingly violate the law,'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (simplified), and calls for "a high 'degree of specificity,'" *id.* (simplified). So "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (simplified).

The majority relies on *Orn* to find that Smith's estate had a clearly established right. But *Orn* doesn't squarely govern this case for several reasons. In *Orn*, the plaintiff consistently tried to drive *away* from the officers and drove at a slow pace— not in a way that was reckless or threatening. *Orn*, 949 F.3d at 1172–73. Instead, everyone agreed that the suspect tried "to *avoid* hitting [the officer's] vehicle." *Id.* at 1175 (emphasis added). And the officers "had no reason to believe that [the suspect] had a firearm, and in fact he did not." *Id.* at 1172. The upshot of the

4

situation was that the suspect never drove at either officer and the officer who fired on him did so from the side and rear. *Id.* at 1175.

So *Orn* offers no guidance to Officers Miller, Suozzo, and Tran, who faced a car coming directly at them. *See id.* at 1174 ("A moving vehicle can of course pose a threat of serious physical harm . . . if someone is at risk of being struck by it."). And a car accelerating at officers, even slowly, can turn deadly in an instant. *See Monzon*, 978 F.3d at 1160 (recognizing that a car "headed in [officers'] direction could accelerate dangerously and without notice at any moment").

3. Because the officers' conduct was objectively reasonable, I would also dismiss the state-law claims.

I respectfully dissent.